15-CV-01701 (KMK)

IN THE

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

WELLS FARGO BANK, N.A.,

Creditor-Appellant,

-v-

CYNTHIA CARSSOW-FRANKLIN,

Debtor-Appellee.

On Appeal from the United States Bankruptcy Court
For the Southern District of New York, 10-20010 (RDD)
Bankruptcy Judge Robert D. Drain

## BRIEF FOR APPELLEE CYNTHIA CARSSOW-FRANKLIN

Linda M. Tirelli, Esq.
Irina Lust, Esq.
GARVEY, TIRELLI & CUSHNER LTD.
50 Main Street, Suite 390
White Plains, New York 10606
Telephone: (914) 946-2200
Facsimile: (914) 946-1300
*Counsel for the Appellee*
*Cynthia Carssow-Franklin*

June 24, 2015

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION............................................................................1

STATEMENT OF THE ISSUES ..............................................................................1

STANDARD OF REVIEW......................................................................................1

STATEMENT OF THE CASE...................................................................................2

ARGUMENT .......................................................................................................5

    I.   THE BANKRUPTCY COURT WAS CORRECT IN HOLDING THAT DEBTOR REBUTTED THE PRESUMPTION OF AUTHENTICITY THAT ATTACHES TO SIGNATURES ON COMMERCIAL PAPER AND WELLS FARGO FAILED TO MEET ITS BURDEN TO PROVE AUTHENTICITY OF THE INDORSEMENT ON DEBTOR'S NOTE  ............................................................5

    II.  THE BANKRUPTCY COURT WAS CORRECT IN HOLDING THAT, AS A MATTER OF LAW, APPELLANT WELLS FARGO LACKED AGENCY WITH FREDDIE MAC AND FREDDIE MAC LACKED ANY RIGHT TO A CLAIM THEREFORE WELLS FARGO COULD NOT HAVE STANDING AS A SERVICING AGENT TO BRING A CLAIM ON BEHALF OF FREDDIE MAC..12

CONCLUSION ...................................................................................................25

CERTIFICATE OF COMPLIANCE WITH LOCAL RULES...............................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

ACC Bondholder Grp. v. Adelphia Commc'ns Corp.,
   367 B.R. 84 (S.D.N.Y. 2007)....................................................................................... 1

Bankr. Servs., Inc. v. Ernst & Young LLP (In re CBI Holding Co.),
   529 F.3d 432 (2d Cir. 2008); ...................................................................................... 1

Casterline v. OneWest Bank, F.S.B.,
   537 Fed. Appx. 314 (5th Cir. 2013)............................................................................ 6

CWCapital Asset Mgmt. L.L.C v Charney-FPG 114 41st Street, L.L.C,
   84 AD3d 506, 923 N.Y.S.2d 453 (N.Y. App. Div. 2011) ........................................ 13

Das v. Deutsche Bank Nat'l Trust Co.,
   2014 Tex. App. LEXIS 2541 (Tex. Ct. App. Mar. 5, 2014)....................................... 6

Fairbanks Capital Corp. v Nagel,
   289 AD2d 99, 735 NYS2d 13 (2001) ....................................................................... 13

In re Conde-Dedonato,
   391 B.R. 247 (Bankr. E.D.N.Y. 2008)...................................................................... 14

In re Daly,
   No. 11-22368, 2015 WL 196509 (Bankr. S.D.N.Y. Jan. 14, 2015) ............................ 14, 15

In re Flanagan,
   503 F.3d 171 (2d Cir. 2007)........................................................................................ 1

In re Hunter,
   466 B.R. 439 (Bankr. E.D. Tenn. 2012) ..................................................................... 6

In re Laycock,
   497 B.R. 396 (Bankr. S.D.N.Y. 2013)....................................................................... 23

In re Minbattiwalla,
   424 BR 104 (Bankr. S.D.NY. 2010)............................................................. 13, 14, 23

In re Parrish,
   326 B.R. 708 (Bankr. N.D. Ohio 2005) .................................................................... 13

In re Phillips,
   491 B.R. 255 (D. Nev. 2013)...................................................................................... 6

In re Tarantola,
   2010 Bankr. LEXIS 2435 (Bankr. D. Ariz. July 29, 2010) ........................................ 6, 7, 8

In re Wilson,
   442 B.R. 10 (Bankr. D. Mass 2011) ........................................................... 6

Ocwen Loan Servicing, LLC v. Thompson,
   2014 U.S. Dist. LEXIS 2109 (E.D. Wisc. Jan. 7, 2014) ........................................ 6

United States v. U.S. Gypsum Co.,
   333 U.S. 364 (1948) ............................................................................... 2

Wells Fargo v. Guevara,
   No. 3:10-CV-545-F, 2010 WL 5824040 (N.D. Tex. Aug. 18, 2010) ........................... 15, 16

## RULES AND STATUTES

### Statutes

Tex. Bus. & Com. Code § 1.206 (a) ......................................................... 7, 8, 10

Tex. Bus. & Com. Code § 3.201 (a) ......................................................... 10

Tex. Bus. & Com. Code § 3.301(i)…………………………………………………10

Tex. Bus. & Com. Code § 3.308(a) ......................................................... 7, 8, 10

### Rules

Fed. R. Evid. 802 ................................................................................. 11

Fed. R. Evid. 803(6)............................................................................... 11

Fed. R. Bank. P. 3001(c)......................................................................... 14, 15

Fed. R. Bankr. P. 7030(b)96)................................................................... 19

### STATEMENT OF JURISDICTION

This is an appeal from an order of the United States Bankruptcy Court granting Debtor's motion objecting to proof of claim as filed by Wells Fargo Bank, N.A., ("Appellant" or "Wells Fargo"). Appellee-Debtor agrees with Appellant's statement of jurisdiction.

### STATEMENT OF THE ISSUES

The Appellee, Ms. Cynthia Carssow-Franklin ("Appellee" or "Debtor" or "Franklin") states that the questions properly before this court are:

1. Whether the Bankruptcy Court erred in finding, based on the evidence presented at trial, (a) that in challenging Wells Fargo's authority to file a proof of claim, the Debtor sufficiently rebutted the presumption of authenticity that attaches to signatures on commercial paper, and (b) that Wells Fargo then failed to authenticate the indorsement that suddenly appeared on Debtor's loan note after Wells Fargo's authority was challenged.

2. Whether the Bankruptcy Court erred in holding that Wells Fargo failed to offer sufficient proof to establish either an agency relationship with Federal Home Loan Mortgage Corporation ("Freddie Mac") or otherwise establish any claim on the part of Freddie Mac as a creditor, and therefore Wells Fargo could not have filed proofs of claim as a servicing agent acting on behalf of Freddie Mac.

### STANDARD OF REVIEW

On appeal, a district court reviews the bankruptcy court's findings of fact for clear error and applies *de novo* review to its conclusions of law. In re Flanagan, 503 F.3d 171 (2d Cir. 2007); Bankr. Servs., Inc. v. Ernst & Young LLP (In re CBI Holding Co.), 529 F.3d 432, 449 (2d Cir. 2008); ACC Bondholder Grp. v. Adelphia Commc'ns Corp., 367 B.R. 84, 90-91 (S.D.N.Y. 2007). A factual finding is not clearly erroneous unless "the reviewing court on the entire

1

evidence is left with the definite and firm conviction that a mistake has been committed." <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364, 395 (1948).

<b><u>STATEMENT OF THE CASE</u></b>

The undisputed record reflects that Wells Fargo filed proof of claim 1-1 ("<u>Claim 1-1</u>") in the Debtor's case on or about July 15, 2010 naming itself, "Wells Fargo Bank, NA" as the claimant creditor. A2297-2235. The Debtor notified counsel to Wells Fargo of the deficiencies in Claim 1-1 as follows: (1) the copy of the note attached to Claim 1-1 bore TWO specific indorsements, neither of which indorsed the note to Wells Fargo (A2301); (2) the series of "assignments" attached to Claim 1-1 were inconsistent with some assigning the security instrument together with the note, others assigning only the security instrument (A2330-2335); (3) the first assignment of deed of trust (A2332) pre-dates the notarized signature of the Debtor on the note and deed of trust by three days (A2317); (4) an "Assignment of Mortgage" attached to Claim 1-1 and signed by John Kennerty ("<u>Kennerty</u>"), an undisputed employee of Wells Fargo Bank, purportedly assigned a "mortgage"[1]  from the assignor, a defunct entity, "Washington Mutual Bank, FA" to assignee, Wells Fargo Bank, N.A (A2334-2335).

Wells Fargo never responded to the Debtor's inquiry about the discrepancies and instead filed an amended proof of claim on September 23, 2010 ("<u>Claim 1-2</u>"). A2336-2374. Claim 1-2 is identical to Claim 1-1 in that in includes all of the same flawed documents, except that the version of the note attached to Claim 1-2 includes an additional indorsement in blank on its face. A2340. It is undisputed this new blank indorsement on the note is a rubber stamp (A1807) the type of a rubber stamp that anyone off the street could order and purchase at any office supply store. The Debtor objected to Claim 1-2, in large part, because: 1) the authenticity of the note

---

[1] The property is located in Texas where the security instrument utilized was a "deed of trust" not a "mortgage."

2

attached to the amended claim was questionable given that it contained an additional stamped indorsement that was inconsistent with the prior filed Note (A2301, A2340); 2) a letter from Wells Fargo addressed to Debtor's counsel indicated the loan was owned not by Wells Fargo but allegedly owned by Freddie Mac (A0328-0331); and 3) there was nothing in the proofs of claim to indicate any involvement by Freddie Mac (A2297-A2374).

During the discovery process, Debtor sought to determine the true owner of the loan. At various times, Wells Fargo alleged that it owned the loan or, alternatively, that Freddie Mac owned the loan and Wells Fargo was Freddie Mac's servicing agent. However, Wells Fargo could not produce a servicing contract with Freddie Mac to establish its agency status as servicer for Freddie Mac. Wells Fargo also could not produce anything to substantiate a valid claim for its alleged principal, Freddie Mac. At the August 17, 2011 hearing, the court directed Wells Fargo to produce the servicing agreement by August 24, 2011. A1706. The directed deadline came and went with no contract or written agreement produced. Wells Fargo then claimed that it could not locate a contract despite its insistence that it was an agent of Freddie Mac. A1718. Debtor then filed a Motion for Partial Summary Judgment as to the issues of in what capacity Wells Fargo brought the claim (*i.e.*, as a servicing agent to a third party or as the actual owner and holder of the Debtor's note) and whether or not the indorsement on the version of the note attached to Claim 1-2 was valid. A1021-1193.

At summary judgment, the Bankruptcy Court identified mounting credibility issues with Wells Fargo's documents, including the filing of a document signed by John Kennerty, the Vice President of Loan Documentation at Wells Fargo, purporting to be the agent of the defunct entity "Washington Mutual Bank, FA." A1729-1801. The Bankruptcy Court held that the fact that a rubber stamp indorsement conveniently appeared on a version of the Note attached to the

amended claim, without any valid evidence in support thereof, and all the other problems with the Wells Fargo's procedures and documents, was enough to overcome the presumption of authenticity of the indorsement. The Bankruptcy Court determined that the validity of the indorsement was, therefore, a triable issue of fact. A1770-1799.

The Bankruptcy Court held that there was simply nothing in the record to indicate Freddie Mac had ever had any involvement with the Debtor's mortgage loan and therefore, while Wells Fargo may have standing to bring a claim as the owner and holder of the note, subject to proving the authenticity of the rubber stamped indorsement, Wells Fargo did not have standing to bring the claim as a servicing agent for Freddie Mac. A1753, 1773, 1780-1782. Further, the Bankruptcy Court determined that Wells Fargo's corporate witness, Mary Ellen Brust ("Brust"), lacked credibility and offered no information as to how or if Freddie Mac ever possessed the Debtor's Note. Nor did Brust have personal knowledge regarding the condition of the indorsement on the note as her testimony was that she never saw the original note. A2393. An artfully worded affidavit of Jose Pinto, another Wells Fargo employee, was deemed inadmissible. A1772.

After summary judgment, Wells Fargo was left with the daunting task of proving it was in possession of the original note with a proper indorsement. The Debtor pursued the deposition of Kennerty who by this time had been terminated from his job at Wells Fargo. A1972-1973. After surviving a motion for protective order in South Carolina, Kennerty's home state, the Debtor conducted the deposition of Kennerty which proved damning to Wells Fargo as he stood behind the truthfulness of his 2010 testimony where he described signing between 50 and 150 documents per day and having staff at Wells Fargo charged with the duty of indorsing notes at the request of foreclosure or bankruptcy counsel. A2222-2223, A1976-1977, A2041-2051.

4

Because the corporate witness, Brust, relied upon by Wells Fargo at summary judgment was deemed to lack credibility, Wells Fargo produced another professional corporate witness, Kyle Campbell ("Campbell"), for trial. At deposition and trial, Campbell demonstrated a lack of actual knowledge as to when or how the indorsement on the note attached to claim 1-2 came to be. A1688-1689. Campbell simply could not explain the rubber stamped indorsement in blank other than to say it was found in the records he reviewed at the request of counsel. He could not testify as to whether the records could be manipulated or how the records were maintained, or who had access to enter documents into the system. A2542. The Bankruptcy Court found that the totality of the evidence indicated that the indorsement in blank appearing on the version of the Note filed with the amended claim was forged. A1688-1695.

## ARGUMENT

**A. THE BANKRUPTCY COURT WAS CORRECT IN HOLDING THAT DEBTOR REBUTTED THE PRESUMPTION OF AUTHENTICITY THAT ATTACHES TO SIGNATURES ON COMMERICAL PAPER AND WELLS FARGO FAILED TO MEET ITS BURDEN TO PROVE THE AUTHENTICITY OF THE INDORSEMENT ON DEBTOR'S NOTE**

The Bankruptcy Court did not err in finding that, based on the evidence presented, Wells Fargo maintained processes and procedures that allowed for the fabrication, and unauthorized alteration of documents, including adding indorsements to mortgage notes upon request of a foreclosure or bankruptcy lawyer. In light of the evidence, the Bankruptcy Court was correct in finding Wells Fargo failed to meet its burden to prove the authenticity of the rubber-stamped indorsement.

Appellant first argues the Bankruptcy Court erred when it focused on the difference between the copy of Debtor's Note attached to Wells Fargo's initial claim and the copy of Debtor's Note attached to Wells Fargo's amended claim. Appellant next argued that the

Bankruptcy Court improperly inferred from Kennerty's testimony that Wells Fargo had a practice of manufacturing indorsements from other lenders in order to enforce the notes it held. Appellant fails to address the mountain of additional evidence considered by the Bankruptcy Court including the discrepancies within Wells Fargo's own purported business records. The Bankruptcy Court's determination that the indorsement could have been forged is amply supported by and throughout the record, and is not clearly erroneous. A1688-1695.

Appellant argues the Bankruptcy Court erred when it "heavily focused" on the difference between the copy of Debtor's note attached to Wells Fargo's initial claim and the version of Debtor's note attached to Wells Fargo's amended claim. Appellant Brief at 15. The opposite is true. The Bankruptcy Court properly sets forth its analysis of the issue by citing applicable Texas statutory law and cases where inconsistencies in two proofs of claims were disregarded. In re Phillips, 491 B.R. 255, 273 (D. Nev. 2013); In re Hunter, 466 B.R. 439, 449-50 (Bankr. E.D. Tenn. 2012); In re Wilson, 442 B.R. 10, 15 n. 6 (Bankr. D. Mass 2011); Casterline v. OneWest Bank, F.S.B., 537 Fed. Appx. 314, 318 (5th Cir. 2013); Das v. Deutsche Bank Nat'l Trust Co., 2014 Tex. App. LEXIS 2541, at *7-8 (Tex. Ct. App. Mar. 5, 2014). The Bankruptcy Court properly determined that under Phillips, for the Debtor to overcome the presumption of authenticity of the note indorsement under Texas law, she must do so by the preponderance of the evidence and if the Debtor does overcome the presumption of authenticity the burden shifts fully on to Wells Fargo to prove the authenticity. A1686. The Bankruptcy Court fully analyzed the evidence to conclude the Debtor met her burden under Phillips, but Wells Fargo had not. The Bankruptcy Court correctly and carefully cites cases in further support of its position, *i.e.*, Ocwen Loan Servicing, LLC v. Thompson, 2014 U.S. Dist. LEXIS 2109, at *14-15 (E.D. Wisc. Jan. 7, 2014) and In re Tarantola, 2010 Bankr. LEXIS 2435, at *13 (Bankr. D. Ariz. July 29, 2010).

6

Rather than distinguishing or even attacking the case law relied on the Bankruptcy Court, Appellant merely recites the cases already thoroughly analyzed by the Bankruptcy Court. Appellant Brief at 15-16. While it is true that those cases held that presumption of authenticity was not rebutted, the Bankruptcy Court rightly found the cases distinguishable holding that the Debtor in this case did rebut the presumption of authenticity and Wells Fargo did not meet its burden to prove authenticity.

The Bankruptcy Court explicitly states in its opinion "Were this the Debtor's ***only evidence***, the Court might nevertheless hold that she had not overcome the presumption in Tex. Bus. & Com. Code §§ 3.308(a) and 1.206(a)" (Emphasis added). A1681. The Bankruptcy Court considered **all** the documentary evidence and testimony. For example, the Bankruptcy Court considered the undisputed fact that Wells Fargo had previously submitted a fraudulent document signed under oath and subject to penalty of perjury. The Bankruptcy Court went to great length discussing the 2010 Assignment of Mortgage signed by Kennerty dated just prior to the filing of the initial proof of claim. The Bankruptcy Court compared this case to <u>Tarantola</u>, where it was held that: "[I]n light of [claimant's] admission that it fabricated the Allonge, and in the absence of any credible explanation for the difference of the Original from other filed versions of the Note, the Court will not apply the usual evidentiary presumptions to the validity of the Endorsements." <u>Id</u> at *13.

The Bankruptcy Court did not err in going beyond the "usual evidentiary presumptions," and properly considered the totality of evidence and circumstances before it. After reviewing relevant statutes and case law, the Bankruptcy Court analyzed all the evidence offered by the Appellee that the blank ABN Amro indorsement was unauthentic and determined that evidence was sufficient to overcome the presumption of authenticity under Tex. Bus & Com. Code §§

3.308(a) and 1.206(a). A1686. The Bankruptcy Court also considered the Assignment of Mortgage from MERS, "as nominee for Washington Mutual Bank, FA" executed by Kennerty, an officer of Wells Fargo (the assignee), on behalf of the assignor. A1682. At summary judgment, the Bankruptcy Court pointed to the credibility issues plaguing Wells Fargo that would require a trial.

> "… Wells Fargo's proof of claim submitted under penalty of perjury contained the -- **what I view to be -- fraudulent purported assignment of mortgage by a Wells Fargo officer purporting to be acting in his capacity as an agent of WaMu through MERS to Wells Fargo in 2010**, when it appears, at least from the public record, among other things, that WaMu had been sold to JP Morgan before then. But whether it was or was not, **there's nothing in the record to suggest that Kennerty would have authority on behalf of WaMu of which he was not an officer simply through the fiction of MERS to assign the mortgage to himself.** So having filed one proof of claim, which after it was -- well, after it filed one proof of claim that was -- contained a different version of the note, and after it filed a second proof of claim which contained such a document, **there are clear issues going to credibility that need to be determined on a full-factual record."** (Emphasis Added) A1789.

The Bankruptcy Court further concluded that in light of Kennerty's deposition testimony and the fact that the fraudulent Kennerty Assignment was dated three days before the filing of Claim 1-1, the Assignment was prepared by Wells Fargo to "improve" the record supporting its right to file a secured claim. A1789. In In re Tarantola, 2010 Bankr. Lexis 2435 (Bankr. D. Ariz. July 29, 2010), the court found the presumption of authenticity was rebutted after a series of inept and alarming submissions that the court described as "tortured." Id. at * 6. In the instant case, the Bankruptcy Court found the creditor's behavior more than just inept finding "the general willingness and practice on Wells Fargo's part to create documentary evidence, after-the-fact, when enforcing its claims, WHICH IS EXTRAORDINARY." A1684.

The Bankruptcy Court thoroughly examined and analyzed Kennerty's deposition transcript for further proof whether there was enough evidence of authenticity. The Bankruptcy Court correctly found that Kennerty had executed an assignment on behalf of MERS as nominee

for Washington Mutual, when Kennerty was employed by Wells Fargo, not MERS or Washington Mutual. A1684. Appellant in its rebuttal states "but this is how MERS works, and how MERS was designed to work." (Appellant Brief at 16) Appellant never produced a competent witness to rebut the Kennerty deposition testimony or to further explain to the Bankruptcy Court exactly how MERS supposedly works. The Bankruptcy Court considered Kennerty's deposition together with exhibits as a whole including testimony in a prior 2010 deposition which occurred around the time of the Kennerty assignment in this case. A1962-2295. The Bankruptcy Court considered facts based on Kennerty's testimony

> "... on a daily basis Mr. Kennerty and his team, members of which he also testified signed a like number of documents each day, id., processed a large volume of loan documents for enforcement with very little thought about what they were doing. It is not clear that Mr. Kennerty fully understood the legal consequences of signing these documents; for example, he testified when shown the Assignment of Mortgage that he executed it not on behalf of the assigning party but, rather, on behalf of the party "in getting the assignment," although he also testified that "I'm – I'm not an attorney, but the way I understand this document, it was assigning the mortgage, taking it out of MERS' name and putting into Wells Fargo Bank's name." Id. at 93-4. It is clear, however, that he pretty much signed whatever outside counsel working on the default put in front of him and that these documents often included assignments, including the Assignment of Mortgage, drafted by Wells Fargo's outside enforcement counsel to fill in missing gaps in the record. A1683

The Bankruptcy Court examined Kennerty's testimony about the process for receiving such requests from outside enforcement attorneys and how people in his department had the job of indorsing notes. When questioned about how often such requests were made, whether on a daily basis or on rare occasions, Kennerty replied, "To the best of my recollection, it was on a regular basis." A2097. He also testified about the information system or systems at Wells Fargo where such requests might be made and maintained.

> Q. And the actual procedure for endorsing an original note, if you could just walk me through that process. What would the processor do?
> A. To the best of my recollection, they would – the request would come in. Again, we would check to see if we had the collateral file. If we – if we had it and depending on the

status of the – of the loan itself, <u>if we had the note then we could check to see, you know, what was actually on the note to see what needed to be done.</u> If we did not have the collateral file then they would work – that processor would work with the collateral file ordering team to reach out with the appropriate attorney or, I'm sorry, the appropriate custodian to obtain the collateral file. <u>And then they would look to – once the file came in they would look to ensure that the original note was in there and check to see if there was any endorsement on the back of the note.</u>

Q. Okay. <u>And if there wasn't how would they go about – how would the processor go about endorsing the note?</u>

A. I don't recall specifically how they completed that particular task.

Q. Was it a rubber stamp? Was it somebody signing? How was it?

A. To the best of my recollection, a stamp was involved but then it had to be signed.

Q. Okay. And if an endorsement was coming from an entity that no longer existed how would it be signed?

A. I do not recall. A2099-2100.

Based on all of the evidence, the Bankruptcy Court did not err in concluding that the foregoing evidence cumulatively shifted the burden to Wells Fargo under Tex. Bus. & Com. Code §§ 3.308(a) and 1.206(a) to show the authenticity of the blank ABN Amro indorsement necessary to establish its status as a holder of the Note under Tex. Bus. & Com. Code §§ 3.301(i) and 3.201(a). The Bankruptcy Court did not err in finding that Wells Fargo failed to meet this burden.

> I conclude that the foregoing evidence cumulatively shifts the burden to Wells Fargo under Tex. Bus. & Com. Code §§ 3.308(a) and 1-206(a) to show the authenticity of the blank ABN Amro indorsement to establish its status as a holder of the Note under Tex. Bus. & Com. Code §§ 3.301(i) and 3.201(a). It constitutes substantial evidence that Wells Fargo's administrative group responsible for the documentary aspects of enforcing defaulted loan documents created new mortgage assignments and forged indorsements when it was determined by outside counsel that they were required to enforce loans. Given that evidence, Wells Fargo should have the burden to establish the bona fides of the blank ABN Amro indorsement that did not appear on the Note attached to Claim No. 1-1 but did appear on the Note attached to Claim No. 1-2. A1686.

The Bankruptcy Court first found that the testimony of Wells Fargo's witness, Campbell, together with certain exhibits copied from Wells Fargo's loan file was not helpful in meeting its burden. The Bankruptcy Court reasoned as follows:

10

Wells Fargo has not carried that burden. To do so, it offered only Mr. Campbell's testimony and, through him, certain exhibits copied from Wells Fargo's loan file. That testimony was not helpful to it. **Mr. Campbell was not involved in the administration of the Debtor's loan until he became a potential witness in 2013. Trial Tr. at 37. He was not involved in the preparation of Claim No 1-2. Id. at 37. He had nothing to say about the circumstances under which the blank ABN Amro indorsement appeared on the Note attached to Claim No. 1-2, with the exception that he located the earliest entry in the electronic loan file where that version of the Note was recorded, pulled up its image and compared it to the original shown him by Wells Fargo's counsel. Id. at 33, 36, 49-50.** He was offered, therefore, only to qualify Wells Fargo's proposed exhibits, copied from Wells Fargo's loan file, as falling within Fed. R. Evid. 803(6)'s business records exception to a hearsay objection under Fed. R. Evid. 802 and to testify that a copy of the Note with the blank ABN Amro indorsement appears in Wells Fargo's electronic records before the preparation of Wells Fargo's initial proof of claim in this case. Emphasis added. A1688.

The Bankruptcy Court concluded that Campbell was not a qualified witness as to the circumstances related to the affixing of the indorsement on the Debtor's Note because he did not know whether there was any person overseeing the accuracy of how the records in the system were stored and maintained; he did not know who controlled access to the system or the procedure for limiting access; he did not know of any procedures for backing up or auditing the system; he was not able to answer what technology ensures the accuracy of the date and time stamping of the entry of documents into the imaging system. A1689. Moreover, the Bankruptcy Court took note that Campbell in his deposition testified that he did not know whether the dates and times of the entry of documents in the system could be changed, but at trial he stated that, after his deposition, "I attempted to look into this, and, to my knowledge, I am not aware of any way to change or remove attachments into the imaging system," which, given his general lack of knowledge about how the system works and failure to explain the basis for his assertion, did not inspire confidence A1689.

The Bankruptcy Court further pointed out that Campbell also undermined his credibility when he claimed he was a custodian of Wells Fargo's electronic record files and stated, "I

review and maintain them, yes", A1690 a remarkable contention in light of his other testimony discussed above. The Bankruptcy Court concluded that Campbell vouched for the system based only on the fact that he and other people at Wells Fargo regularly use the system of record and he can find documents on it that match documents shown to him by counsel, although he does not know who originated them and put them there and how, and perhaps exactly when, they were put there. While the court admitted the business records into evidence under business records rule, the court noted that the records actually supported the conclusion that the Note endorsement was a forgery. The Court painstakingly went through the court record and concluded that there was no explanation as to why if the note was indorsed when Wells Fargo alleges to have acquired possession in 2007, the earliest record Campbell could find of an indorsement on the note was in 2009. A1687-1688. As clearly demonstrated above, taken as a whole and looking to the totality of the circumstances, the court did not err in finding that Wells Fargo did not meet its burden to authenticate the rubber stamped indorsement. The Bankruptcy Court properly decided that Claim 1-1, as amended by Claim 1-2, should be disallowed.

**B. THE BANKRUPTCY COURT WAS CORRECT IN HOLDING THAT, AS A MATTER OF LAW, APPELLANT WELLS FARGO LACKED AGENCY WITH FREDDIE MAC AND FREDDIE MAC LACKED ANY RIGHT TO A CLAIM THEREFORE WELLS FARGO COULD NOT HAVE STANDING AS A SERVICING AGENT TO BRING A CLAIM ON BEHALF OF FREDDIE MAC**

The Bankruptcy Court correctly found after the hearing on partial summary judgment, that, as a matter of law, Wells Fargo did not service Debtor's loan for Freddie Mac and that Wells Fargo had not presented evidence sufficient to create a triable issue of fact as to its standing as a servicer for Freddie Mac. Specifically, the Bankruptcy Court found that there was no meaningful evidence to support the assertion that Claim 1-2 was filed by Wells Fargo as Freddie Mac's agent or that Freddie Mac actually was the investor/owner of the loan, and,

accordingly, granted that portion of the Appellee's summary judgment motion for an order declaring that Claim 1-2 was not filed in Wells Fargo's capacity as servicing agent for a third party.

A loan servicer must meet two basic elements in order to proceed with foreclosure activities on behalf of a third-party principal. **First, the servicer must act on behalf of a principal that has the right to enforce the obligation. Second, the principal itself must have delegated authority to the servicer to perform the particular activity in question.** CWCapital Asset Mgmt. L.L.C v Charney-FPG 114 41st Street, L.L.C, 84 AD3d 506, 507, 923 N.Y.S.2d 453 (N.Y. App. Div. 2011) citing Fairbanks Capital Corp. v Nagel, 289 AD2d 99, 735 NYS2d 13 (2001) ("the foreclosure complaint identified the trustee as the mortgage holder, the action was **expressly maintained in plaintiff's capacity as servicing agent**, and, in **the Pooling and Servicing Agreement, the trustee delegated to plaintiff authority to act** with respect to the subject mortgage.") (Emphasis added) The claimant must prove initially "that it is the creditor to whom the debt is owed or, alternatively, that it is the authorized agent of the creditor." See In re Parrish, 326 B.R. 708, 719 (Bankr. N.D. Ohio 2005). In the case of In re Minbattiwalla, 424 BR 104 (Bankr. S.D.NY. 2010), Judge Glenn set forth a blue print for agents filing proofs of claim:

> "The claimant **must prove initially** that it is the creditor to whom the debt is owed or, alternatively, **that it is the authorized agent of the creditor**." *Parrish,* 326 B.R. at 719. In sustaining the debtor's objection to a mortgage claim, the *Parrish* court noted: "The relationships between and among these entities may be understood internally by [alleged assignee], but it is the claimant's burden to bring that information to the court. If the claimant is the original lender, the claimant can meet its burden by introducing evidence as to the original loan. If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant. **A claimant who is a servicer must, in addition to establishing the rights of the holder, identify itself as an authorized agent for the holder.** Here, [alleged assignee] might be the current holder of the debtor's note and/or mortgage or it might be

13

the servicer for whoever the holder is, but it failed to prove either relationship." *Id.* at 720-21. In re Minbatiwalla 424 B.R. 104, 113 (Bankr. S.D.N.Y. 2010) (Emphasis added)

It is clear from Judge Glenn's holding that in addition to establishing rights of the holder; servicer must show it has authority to act as holder's agent. Appellant's proof of claim is best described as a thrown together mess of documents that make no sense and seems to be the precise sort of claim that Judge Glenn sought to prevent post-Minbatiwalla. The Appellant misses the point that Wells Fargo, if acting as an agent, needed to produce documentation under F.R.B.P. 3001(c) to evidence a valid claim for Freddie Mac (the alleged principal and holder). Appellant further misses the mark as to its burden to prove agency. Wells Fargo simply asked the court to believe that Freddie Mac was the owner of the loan, and that Wells Fargo was Freddie Mac's servicing agent without any evidentiary support. There is simply nothing in the record or the proof of claim to substantiate that a debt is owed to Freddie Mac and there is nothing to prove Wells Fargo is authorized as an agent to bring a claim on behalf of Freddie Mac.

Appellant relies on In re Conde-Dedonato, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008), however, that reliance is misplaced. In Conde-Dedonato the main issue was whether a servicer has a standing to file a proof of claim. The Debtor never argued that a servicer has no standing to file a proof of claim and the Bankruptcy Court did not decide that a servicer cannot file a proof of claim. Both the Debtor and the Bankruptcy Court posit that in order to file a claim, the servicer must show it is an agent for the principal, and that the principal has a valid claim. Wells Fargo is not a servicer for Freddie Mac and there is nothing in the record to dispute this fact. Appellant also cites In re Daly, No. 11-22368, 2015 WL 196509, at *3 (Bankr. S.D.N.Y. Jan. 14, 2015) for the position that "it is well established that a servicer has standing to file a proof of claim on behalf of a lender." However, unlike in the instant case, agency status in Daly was

established under the language of the PSA and Debtor acknowledged that Wells Fargo was the servicer of mortgages assigned to the Trust. <u>Id.</u> at *7. In this case, there was absolutely no agreement produced specifically defining Wells Fargo as a servicer, and Debtor has never acknowledged that Wells Fargo is the servicer acting on behalf of Freddie Mac. Appellant's reliance on the <u>Daly</u> case is misplaced.

By contrast, in a case strikingly similar to the case at bar, another bankruptcy court granted Debtor's Motion for Summary Judgment disallowing a proof of claim when Wells Fargo could not prove it was the servicer for Freddie Mac. <u>Wells Fargo v. Guevara</u>, No. 3:10-CV-545-F, 2010 WL 5824040, at *2 (N.D. Tex. Aug. 18, 2010) (affirmed on appeal) ("**Wells Fargo admits that it is not the owner of the Note. Its proof of claim failed to demonstrate that it was the servicer, as Wells Fargo did not provide any documentation with respect to its agreement with Freddie Mac. Accordingly, the Court AFFIRMS the bankruptcy court's finding that Wells Fargo's Proof of Claim did not substantially comply with Rule 3001.** The failure to substantially comply with Rule 3001 does not disallow a claim—it merely shifts the burden to the creditor to prove that [sic] the claim to be valid.") (Emphasis added). "The mere fact that Wells Fargo's records indicate it is the servicer and that one of its employees who has examined the record can relay the contents of the records to the Court does not establish an issue of material fact as to whether Wells Fargo is the servicer on the loan. To do this, Wells Fargo needed to produce either a witness with personal knowledge of the arrangement with Freddie Mac, or produce the servicing agreement itself." <u>Id.</u> at * 4.

Here, Wells Fargo failed to demonstrate either element. If acting as a servicer for Freddie Mac, Wells Fargo could have made this clear by listing the name of the creditor as "Wells Fargo Bank, NA as servicer to Freddie Mac" and attaching a copy of a servicing agreement. It stands to

reason that if acting as a servicing agent, Wells Fargo would have to take direction and act only with authority delegated to it by the principal itself, Freddie Mac. Wells Fargo lacks authority to file and collect on a claim in the bankruptcy court as a servicer because the current holder of the obligation is still unidentified. Even if Wells Fargo could show it was the servicer for Freddie Mac, in general, it would still need to demonstrate that the loan was transferred to Freddie Mac, thereby making Freddie Mac the creditor, or owner of the loan. Nothing in the record so demonstrates. The Bankruptcy Court correctly held that Appellant failed to provide any persuasive evidence whatsoever that it is indeed an authorized agent for Freddie Mac.

Appellant asserts that the Bankruptcy Court erred in holding it to be a fatal flaw that Wells Fargo did not state in its proofs of claim that it was filing in a representative capacity. Appellant goes on to discuss several cases that the Bankruptcy Court allegedly mistakenly relied on. These cases establish that a creditor may amend its proof of claim **to disclose the principal on whose behalf it is acting**, even after the bar date. (Emphasis added) The Bankruptcy Court was correct in relying on these cases. While it is true that Wells Fargo amended its claim, Appellant continued to hold itself out to be the creditor in Claim 1-2 and did not indicate that it was acting as a mortgage servicer for a third party. Wells Fargo never identified Freddie Mac as a creditor or otherwise as the real party in interest. Wells Fargo has failed to attach any documentation to its Claim 1-2 evidencing its authority to act on behalf of the present owner to collect on the note and to enforce the mortgage.

Remarkably, Appellant now argues that the Debtor "would not be unfairly prejudiced if Wells Fargo were permitted to amend its proof of claim to correct what was, at most, a paperwork error." After over 4 years of litigation causing a substantial corresponding Debtor's legal bill and causing other creditors to remain on hold waiting for this case to confirm, it is

16

unclear what Wells Fargo considers to be "not unfairly prejudiced." Wells Fargo now suggests that this is all just a "paperwork error." Appellant Brief at 16. Nowhere in the record does Appellant bring up such a "paperwork error" or provide any witness to this entire case being one big misunderstanding due to a paperwork error. Wells Fargo has not only had sufficient time to seek leave to amend its claim a second time, but has failed to provide any proof pertaining to the ownership of the note by Freddie Mac, the party for whom Wells Fargo claims to be servicing the Appellee's loan. Appellant should not be allowed to promise some "phantom future" amendment when it had many opportunities to do so. Appellee is entitled to finality of the matters in this case.

Appellant argues that Debtor does not appear to disagree that Wells Fargo serviced her loan, nor could she do so on this record. This is incorrect. Appellee has spent almost four years litigating this case in her attempt to determine whether an agency relationship between Wells Fargo and Freddie Mac exists and who the true owner of her note is. Throughout litigation, the Appellee has been requesting a copy of the servicing contract between Freddie Mac and Wells Fargo via request for production of documents, depositions, motion practice and finally trial. Despite Appellee's consistent demands, Wells Fargo has failed to produce a copy of a servicing contract between Freddie Mac and Wells Fargo pertaining to the servicing of the Appellee's Loan. In fact, Appellee still does not have answers to who the real servicer on her loan is and who is the holder of her loan. There is no dispute that Wells Fargo has taken money from the Debtor, but it cannot produce anything evidencing its authority to collect such payments. Wells Fargo had ample time and opportunity to offer such evidence in the record but failed to do so. Indeed, it was mentioned in the record on multiple occasions that no such servicing contract

between Wells Fargo and Freddie Mac ever existed. The Bankruptcy Judge properly relied on all the record in front of him in evaluating whether an agency relationship existed:

> THE COURT: the record is clear that there is no such agreement for purposes of this motion, there's no such agreement, no such contract, except to the extent that you can read the e-mail as a contract. A1736

> THE COURT: And on the first issue, the facts are all that they're not the agent, that they're not the servicer, there's nothing to say it. I mean they say they are, but there's nothing to support it. I think. I mean, Ms. Schiavo can point something out to me, but it seems very remote. A1744

Appellant argues that a computer-generated form letter—the "Hello" letter—identifying itself as Debtor's servicer is sufficient proof of a servicing contractual relationship between Wells Fargo and Freddie Mac. Nowhere in the letter does Wells Fargo identify Freddie Mac as a holder of the loan or mention any agency relationship with Wells Fargo. The letter is nothing more than hearsay and fails to mention anything about ABN Amro (the entity to which the note was supposedly specifically indorsed until 2009 as set forth above) or Freddie Mac, the entity Wells Fargo would like to say is the actual holder despite no proof Freddie Mac ever had possession of any of the loan documents. Thus, the Bankruptcy Judge was correct in finding that no servicing relationship exists:

> THE COURT: "… I mean to my view that's what a Hello Letter is, right, hello debtor, we're giving you this... You know? But, in any event, it doesn't -- to me it doesn't establish an agency relationship. A1754-1755

Appellant argues that Wells Fargo's business records indicated that Debtor intermittently paid Wells Fargo on the note. Appellant is attempting to direct attention away from the real issue of why Wells Fargo failed to produce a servicing agreement or official contract establishing such agency relationship. The mere fact that Debtor made payments does not prove that an agency relationship existed between Wells Fargo and any party it claims to be collecting on behalf of. Wells Fargo's witnesses were unable to proffer any meaningful connection of Wells Fargo to

Freddie Mac. For example, Wells Fargo claimed that there was no record of any remittances from Wells Fargo to Freddie Mac for payments made on the loan. Appellant is using flawed reasoning in relying on actions of an unsophisticated borrower to prove an actual contractual relationship between two different entities. The Bankruptcy Court was correct in discounting payments made by Debtor on the loan to Wells Fargo to be a proof of a contractual relationship between it and Freddie Mac.

> THE COURT: However, there's no evidence whatsoever of any record of having any payments over by Wells Fargo to Freddie Mac in connection with collections on this loan. In the 7056-1 statements it suggests that there's no evidence -- or state that there's no evidence of any sort, any such payments. A1782

Appellant argues that the Bankruptcy Judge should have taken into account that "Wells Fargo's corporative representative" testified that there was a servicing agreement between it and Freddie Mac. Appellant, however, conveniently fails to specify which "Wells Fargo's corporative representative" it refers to, *i.e.*, Campbell or Brust. It was established on the record that Appellant's designated F.R.B.P. 7030(b)(6) representative, Brust, lacked personal knowledge as to the existence of a contract between Wells Fargo and Freddie Mac; lacked personal knowledge regarding the relationship between Freddie Mac and Wells Fargo; and lacked personal knowledge as to validity of a claim by Freddie Mac. The Bankruptcy Court properly considered Brust's testimony. In relevant part, Brust testified as follows:

> Q. Are you aware of a servicing contract between Wells Fargo and another party pertaining to this loan?
> A. I am aware that Wells Fargo has an agreement with another party, yes.
> Q. What party is that?
> A. Freddie Mac.
> Q. Have you seen that agreement?
> A. No, I have not. A2382
>
> Q. When you say that Freddie Mac is the investor on this loan, are you saying that Freddie Mac somehow or other acquired ownership of this loan?

A. When I say "investor," yes, they do own it, funded it, whatever terminology you want to use. A2389.

Q. Do you know when Freddie Mac would have acquired this loan?
A. It's my understanding they acquired it at origination.
Q. What does that mean?
A. On or about October 30, 2000
Q. How do you know that?
A. Via the Freddie Mac website. A2390.

Q. In servicing this loan, when the money comes in from Ms. Franklin and gets paid to Wells Fargo, does Wells Fargo eventually forward that money on to the investor? Is that how it works?
A. I believe it is, yes.
Q. Would there be receipts for those transactions between Wells Fargo and the investor?
A. You mentioned remittance. I believe that's the receipt.
Q. Have you seen the remittance reports for this case?
A. I have not.
Q. Do you know if they exist?
A. I personally haven't seen them. So, I know remittance exists for Freddie Mac. I haven't seen this loan's remittance. A2390.

Q. Where in that chain of transfers that you just described as to the deed of trust, does Freddie Mac fall into play?
A. Freddie Mac was the investor.
Q. When was the deed of trust transferred to Freddie Mac?
A. The investor funds it and ensures it. The note, the deed of trust moves along with them as sort of, like, above I guess. That's the only way to describe it (indicating)
MS. TIRELLI: Let the record reflect that the witness has her hand in the air making a circular motion when she said the word "above." A2421.

Q. Did Freddie Mac ever have possession of the original note and original deed of trust from Ms. Franklin's loan, if you know?
A. I don't know. A2427.

Based on this testimony, the bankruptcy court correctly found that Wells Fargo's representatives failed to offer any credible evidence as to the existence of any agency relationship between Wells Fargo and Freddie Mac.

Appellant also states that the Bankruptcy Judge should have considered Wells Fargo's business records indicating that Wells Fargo was servicing Debtor's loan for Freddie Mac. These business records are hearsay, should not be allowed as evidence and do not prove an actual

20

agency relationship. The Bankruptcy Court correctly found that Appellant's proffered business records were not sufficient proof of an agency relationship.

Appellant argues that the Bankruptcy court should have considered a letter from Freddie Mac that specifically identified Debtor's loan and that authorized Well Fargo to enter into a loan modification with Debtor. What Appellant is referring to is a copy of a redacted, unsigned, unauthenticated purported letter from "Freddie Mac" to "Wells Fargo Bank, NA" dated February 18, 2008[2]. A1300-1301 Said letter indicates "Freddie Mac is to retain first lien position" and gave a directive to prepare a loan modification agreement if certain conditions are met. The letter, however, is dated after the alleged modification agreement so it is not clear what loan modification is being directed. The Bankruptcy Court correctly ruled that a copy of this redacted, unsigned and unauthenticated letter bears no evidence of a servicing agency relationship between Wells Fargo and Freddie Mac:

> THE COURT: The proof of claim attaches, as I noted, a letter, apparently from Freddie Mac, although it doesn't look like any letterhead I've ever seen before, authorizing a loan modification and there is -- that Wells Fargo has negotiated and there is very general testimony by Wells Fargo's 30(b)(6) witness that there is in fact a loan servicing relationship between Freddie Mac and Wells Fargo. A1781.

Appellant also argues that the Bankruptcy court should have considered the fact that allegedly Debtor herself submitted evidence supporting Wells Fargo's servicer standing. Appellant claims that in response to a Qualified Written Request from Debtor's counsel, Wells Fargo had advised that Freddie Mac owned the loan but that Wells Fargo serviced it and that Freddie Mac's customer service department told Debtor's counsel the same thing. Appellant refers to a written request made pursuant to the Truth In Lending Act ("TILA") dated July 26, 2010 served on both Wells Fargo and its counsel of record. In a letter addressed to Debtor's

---

[2] Neither the original loan modification agreement nor the original letter were ever produced and would be required under the best evidence rule.

Counsel, dated August 18, 2010, Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. stated: "The investor of the loan is Freddie Mac. However, all inquiries and concerns should be directed to us as we have been contracted to service the loan on behalf of the investor." Again, self-serving communications to Debtor either written or oral do not prove an actual contractual relationship between Wells Fargo and Freddie Mac. Wells Fargo consistently has been unable to proffer any evidence that such contractual relationship indeed exists. The Bankruptcy Judge correctly held this evidence did not establish that Wells Fargo was acting on behalf of its alleged principal, Freddie Mac.

Appellant heavily relied on its argument that Wells Fargo negotiated and executed a loan modification in its capacity as servicer of Debtor's loan and that the Bankruptcy Judge should have accepted it as "probative evidence" that Wells Fargo was a servicer for Freddie Mac. However, Appellant fails to mention that it in fact was trying to introduce a loan modification transmittal form, unsigned and unauthenticated, indicating Wells Fargo Bank, N.A., as a "servicer" and redacted as to the identity of the "investor" and referencing the incorrect loan origination date of October 30, 2000.[3] There are multiple flaws with Appellant's reliance on Debtor's acceptance of loan modification as a proof that Wells Fargo was a servicer for its principal, Freddie Mac. The Bankruptcy Judge correctly pointed out that the loan modification letter was dated after the loan modification was completed. How is it possible that the principal approved the loan modification after the fact? Further, Wells Fargo failed to produce the original loan modification documents. This loan modification document is hearsay as it was not authenticated by any witness, the copy presented is redacted and does not mention that Freddie Mac owned the loan or that Wells Fargo was acting on behalf of any third party.

---

[3] As per the notary acknowledgment which accompanied the note and deed of trust and the Debtor's testimony at trial, the loan agreement was entered into on November 2, 2000 and not October 30, 2000. A2317, A1897-1898.

As such, Wells Fargo failed to produce competent evidence of any agency relationship with Freddie Mac. No servicing contract exists between Wells Fargo and Freddie Mac. In re Minbatiwalla, 424 B.R. 104 (Bankr. S.D.N.Y. 2010) (claimant who is a servicer must, in addition to establishing the rights of the holder, identify basis for why it is an authorized agent for the holder".)

Wells Fargo, being one of the largest banking institutions in the country, claims to be doing business on a handshake. Additionally, the Freddie Mac online servicing guide produced under the guise of being an actual "Servicing Agreement" does not so much as mention or identify the entity "Wells Fargo Bank NA" once in its entire 2000+ pages; it is not a servicing agreement and does nothing to establish agency between Wells Fargo and Freddie Mac. The Bankruptcy Court also correctly noted that the Freddie Mac online servicing guide produced by Wells Fargo did not include any reference or mention of "Wells Fargo Bank, NA" or of any other specific mortgage servicer. Moreover, the Freddie Mac online servicing guide did not include a signature line and was otherwise not executed by Wells Fargo. Wells Fargo's own corporate witness was unable to identify the servicing guide as a contract and had no personal knowledge of a contract. A2382. Further, Appellant's reliance on In re Laycock, 497 B.R. 396, 401-02 (Bankr. S.D.N.Y. 2013) is misplaced. In Re Laycock, debtor was later estopped to argue that the same property was not his principal residence when he already admitted to it being a principal residence. Appellant is arguing the same applies here and is making a leap that the Debtor agreed that Wells Fargo had authority to modify her loan *on Freddie Mac's behalf*, and therefore, Debtor is estopped from arguing that Wells Fargo does not have authority to file a proof of claim on Freddie Mac's behalf. This argument fails because there is nothing to indicate that the debtor ever had notice that her loan was owned by Freddie Mac or that she was agreeing

23

to enter into a contract with an agent of Freddie Mac. The original loan modification was never produced and never authenticated. In short, the Bankruptcy Court found correctly that there was no evidence whatsoever of servicing relationship. It is undisputed that Wells Fargo cannot, will not or is otherwise unable to produce a servicing contract between Wells Fargo and Freddie Mac.

Once again, Appellant in its brief makes a grand promise of case law arguments about how the Bankruptcy Court erred as a matter of law, but fails to effectively establish its claims. Appellant does nothing in its brief to point out relevant evidence that the Bankruptcy Court somehow missed. Appellant also does not address any of the case law relied upon by the Bankruptcy Court and fails to establish where there was a mistake as to the case law application. In its ruling, the court provides a thorough rationale and cites ample authority to which the Appellant offers no counter. Appellant has failed to prove how the Bankruptcy Court erred as a matter of law. Therefore, following *de novo* review of the Bankruptcy Court's rulings, this Court should be satisfied that the Bankruptcy Court properly rejected all of Appellant's claims. Even though Appellant attempts to re-introduce additional facts in support of its argument that Wells Fargo has a servicing relationship with Freddie Mac, it only argues that Judge Drain erred as a matter of law. Appellant has not asserted any specific factual errors the Bankruptcy Court made and whatever assertions Appellant made had no bearing on the Bankruptcy Court's decision, nor did they affect either party's substantial rights. If these are errors, they are utterly harmless. Thus, Appellant's failure to establish any factual errors does not provide a basis for this Court to overturn the decision of the Bankruptcy Court.

No new evidence has been offered by the Appellant. As the Appellee argued and the Bankruptcy Court agreed, although a proof of claim constitutes prima facie evidence of the amount and validity of the claim, the burden of proof shifts to the Claimant in response to an

24

objection that presents evidence and arguments that tend to refute the claim. The Appellee's objection to proofs of claim marshaled an abundance of such evidence and arguments. The Appellant produced insufficient evidence to rebut the Appellee's objection, let alone carry his burden of proof. Therefore, the Bankruptcy Court was correct in its ruling that Appellant's proofs of claim should be expunged.

## CONCLUSION

The Bankruptcy Court was correct in concluding that Debtor rebutted the presumption of authenticity that attaches to signatures on commercial paper and that she presented sufficient evidence that Wells Fargo had forged the indorsement in blank on her note and therefore lacked standing to file the claim as owner or holder of the note. The Bankruptcy Court was also correct in finding that Wells Fargo lacked standing to file any claim as a servicing agent for Freddie Mac. For all the foregoing reasons, the Appellant's Appeal should be denied and the Bankruptcy Court's ruling sustained.

**Dated**: June 24, 2015

Respectfully submitted,

_/s/ Linda M. Tirelli_
Linda M. Tirelli, Esq.
Garvey, Tirelli & Cushner Ltd.
50 Main Street, Suite 390
White Plains, New York 10606
Telephone: (914) 946-2200

_/s/ Irina Lust_
Irina Lust, Esq.
Garvey, Tirelli & Cushner Ltd.
50 Main Street, Suite 390
White Plains, New York 10606
Telephone: (914) 946-2200

<u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(C)
AND INDIVIDUAL RULES OF PRACTICE II. B.**</u>

This brief complies with the limitations of Local Rule 7-1(c) and Individual Rules of Practice

II.B.

**Dated**: June 24, 2015
         White Plains, New York

                                        Respectfully submitted,

                                         _/s/ Linda M. Tirelli_
                                        Linda M. Tirelli, Esq.
                                        Garvey, Tirelli & Cushner Ltd.
                                        50 Main Street, Suite 390
                                        White Plains, New York 10606
                                        Telephone: (914) 946-2200

                                        _/s/ Irina Lust_
                                        Irina Lust, Esq.
                                        Garvey, Tirelli & Cushner Ltd.
                                        50 Main Street, Suite 390
                                        White Plains, New York 10606
                                        Telephone: (914) 946-2200