UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

CYNTHIA CARSSOW-FRANKLIN,

               Debtor.

-------------------------------------------------------------X

WELLS FARGO BANK, N.A.,

               Appellant,

    -v-

CYNTHIA CARSSOW-FRANKLIN,

               Appellee.

Case No. 15-CV-1701 (KMK)

OPINION AND ORDER

Appearances:

Linda M. Tirelli, Esq.
Linda M. Tirelli and Westchester Legal Credit Solutions Inc.
White Plains, NY
*Counsel for Debtor-Appellee*

David Dunn, Esq.
Nicole E. Schiavo, Esq.
Hogan Lovells US LLP
New York, NY
*Counsel for Appellant*

KENNETH M. KARAS, District Judge:

      Wells Fargo Bank, N.A., ("Wells Fargo" or "Appellant") appeals from the bankruptcy

court's "Order Disallowing and Expunging Claims of Wells Fargo Bank, NA," ("Disallowance

Order"), dated February 9, 2015.  (*See* Dkt. No. 1.)  More specifically, Wells Fargo challenges

the bankruptcy court's May 21, 2012 Order granting the partial summary judgment motion of

Cynthia Carssow-Franklin ("Debtor") on the issue of Wells Fargo's standing to file a proof of

claim on behalf of Freddie Mac, and the bankruptcy court's January 28, 2015 decision granting Debtor's claim objection on the ground that Wells Fargo was not a holder of Debtor's note. (*Id.*) For the reasons given herein, the judgment of the bankruptcy court is affirmed in part and reversed in part.

I. Factual and Procedural Background

On or about October 30, 2000, Debtor executed a promissory note (the "Note") in the principal amount of $145,850, in favor of Mortgage Factory Inc. ("Mortgage Factory"). (A108– A110.)[1]  The loan was secured by a deed of trust on real property located in Round Rock, Texas (the "Deed of Trust"). (A111–A126.)[2]  An "Assignment of Lien," dated October 30, 2000, purports to assign the Deed of Trust from Mortgage Factory to ABN Amro Mortgage Group, Inc. ("ABN Amro"). (A139–A140.)[3]

At the heart of much of this appeal is the Parties' dispute over what happened next. According to Wells Fargo, Mortgage Factory, in addition to assigning the Deed of Trust, also specifically indorsed the Note to ABN Amro. (Br. for Appellant Wells Fargo Bank, N.A.

---

[1] While October 30, 2000 appears as the date on both the Note and Deed of Trust, a notary acknowledgement indicates that the Deed of Trust was signed on November 2, 2000, and Debtor testified that she signed the Note on November 2, 2000. (*See* Br. for Appellee Cynthia Carssow-Franklin ("Appellee Br.") 22 n.3 (Dkt. No. 22).)  The exact date is immaterial to this Appeal.

[2] Citations beginning with the letter "A" are citations to the Appellant's Appendix, filed with its opening brief, at Dkt. No. 19, unless otherwise noted.

[3] Debtor has questioned the validity of this assignment.  After Wells Fargo filed its initial proof of claim, Debtor's counsel notified Wells Fargo's counsel that the Assignment of Lien, dated October 30, 2000, "pre-dates the notarized signature of . . . Debtor on the [N]ote and [D]eed of [T]rust by three days." (Appellee Br. 2.)

("Appellant Br.") 3 (Dkt. No. 19).)   ABN Amro further transferred Debtor's loan to Washington

Mutual Bank, N.A. ("Washington Mutual"), "indorsing the [N]ote in blank and executing a

written assignment of [Debtor's] [D]eed of [T]rust, including 'all beneficial interest in and title

to said Deed of Trust' to the Mortgage Electronic Registration Systems, Inc. ('MERS') as

nominee." (*Id.* at 3–4 (citing A110, A141–A142).)   Later, Wells Fargo obtained the servicing

rights to Debtor's loan, effective February 16, 2007, from Washington Mutual.  (*Id.* at 4.)  Wells

Fargo maintains that it services the loan for Freddie Mac, the owner of Debtor's loan.  (*Id.* at 4,

13–14.)  Around that time, Wells Fargo sent Debtor what it calls a "Hello" letter, which advised

Debtor that Wells Fargo would begin servicing her loan on February 16, 2007.  (*Id.* at 4 (citing

A286).)  In conjunction with the servicing transfer, the Note, "bearing the in-blank indorsement

from ABN Amro," and the Deed of Trust, were delivered to Wells Fargo.  (*Id.*)  A written

assignment, which was not executed until July 12, 2010, memorialized the Deed of Trust's

transfer from MERS to Wells Fargo.  (*Id.* (citing A143–A145).)  Finally, about a year after Wells

Fargo began servicing the loan, Debtor and Wells Fargo agreed to modify the loan.  (*Id.* (citing

A134–A136).)  The loan-modification agreement states that Debtor "requested, and [Wells

Fargo] has agreed, . . . to a modification in the payment" of Debtor's loan, and that Debtor

promises "to pay the unpaid principal balance plus interest, to the order of [Wells Fargo]."

(A135.)

     Debtor disputes much of this narrative.  Most pertinent to the pending appeal, Debtor

argued, and the bankruptcy court agreed, both that the blank indorsement was actually forged,

that is, the indorsement was stamped on the Note after Wells Fargo filed its initial proof of claim

in Debtor's bankruptcy in an attempt to improve the record with respect to Wells Fargo's

standing to enforce the Note, and that Wells Fargo had failed to provide sufficient evidence that it was the servicer of Debtor's loan authorized to file a proof of claim to enforce the Note. (*See generally* Br. for Appellee Cynthia Carssow-Franklin ("Appellee Br.") (Dkt. No. 22).) Although Debtor notes that "[t]he original loan modification was never produced and never authenticated," (Appellee Br. 24), she does not dispute that she entered into a loan modification with Wells Fargo.

On June 1, 2010, Debtor petitioned for Chapter 13 bankruptcy relief in the United States Bankruptcy Court for the Southern District of New York. (*See* A1–A2.) On July 15, 2012, Wells Fargo filed a proof of claim, Claim No. 1-1, asserting an indebtedness of $170,072.60, including prepetition arrears of $38,163.16. (*See* Mem. of Decision on Debtor's Objection to Claim of Wells Fargo Bank, NA ("Order") 1 (Dkt. No. 109, 10-20010 Dkt. (Bankr. S.D.N.Y.)).) The proof of claim attached a number of documents, including a copy of the Note, dated October 30, 2000, payable to Mortgage Factory in the amount of $145,850, which was signed by Debtor. (*See* Order 2; *see also* A67–A105.) The version of the Note attached to Claim No. 1-1 bears a specific indorsement by Mortgage Factory to ABN Amro and no other indorsements. (*Id.*; *see also* A71.) Claim No. 1-1 also attached the aforementioned assignments, including the Assignment of Lien, dated October 30, 2000, pursuant to which Mortgage Factory assigned its rights under the Note and related liens to ABN Amro, and the "Assignment of Deed of Trust" by ABN Amro, dated June 20, 2002, pursuant to which ABN Amro assigned "all beneficial interest in" the Deed of Trust securing the Note, "together with the [N]ote," to MERS, "as nominee for Washington Mutual Bank, FA." (*See* A100–A102; Order 2.) Also attached to Claim No. 1-1 was an "Assignment of Mortgage," pursuant to which MERS purported to assign to Wells Fargo

4

"a certain mortgage" made by Debtor pertaining to the Note. (*See* A104–A105.) The Assignment of Mortgage is dated July 12, 2010, which is three days before Wells Fargo filed Claim No. 1-1, and is executed on behalf of MERS "as nominee for Washington Mutual," by John Kennerty ("Kennerty"), who is identified only as an "Assistant Secretary." (*See* A105; *see also* Order 3.)[4]

In the underlying Claim Objection, Debtor's counsel represented without dispute that after reviewing Claim No. 1-1, she contacted Wells Fargo's then-counsel with questions regarding Wells Fargo's standing to assert Claim No. 1-1. (Order 3.) Eventually, on September 23, 2010, Wells Fargo filed another proof of claim, amended Claim No. 1-2, which was the same as Claim No. 1-1 in all respects, except that the copy of the Note attached to Claim No. 1-2 had a second indorsement (in addition to the specific indorsement from Mortgage Factory to ABN Amro): a blank indorsement, signed by Margaret A. Bezy, Vice President, for ABN Amro. (Order 4; *compare* A110, *with* A71.)

Debtor filed a Claim Objection, asserting a number of reasons as to why Claim No. 1-2 should be disallowed under 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007. (Order 4; *see also* A20–A57.) The two arguments relevant to this appeal are that Wells Fargo lacked standing to assert the claim because it did not own the loan upon which the claim was based, yet filed the claim on its own behalf, and that the blank indorsement that appears in the version of the Note attached to Claim No. 1-2 was forged to solidify Wells Fargo's right to enforce the Note. (Order 4–5.)

---

[4] It is undisputed that when he executed the Assignment of Mortgage, Kennerty was an employee of Wells Fargo and MERS. (*See* Order 3 & n.3.)

With discovery ongoing, Debtor moved for summary judgment under Fed. R. Bankr. P. 7056, primarily on the grounds that Wells Fargo did not own the Note and yet had not filed Claim No. 1-2 in a representative capacity.  (Order 5–6; *see also* A360.)  In a bench ruling on March 1, 2012, memorialized by an Order dated May 21, 2012, the bankruptcy court granted in part and denied in part Debtor's summary judgment motion.  (Order 6–7; *see also* A908–A979.)  The motion was granted to the extent that Claim No. 1-2 sought to assert the claim in a representative capacity on behalf of Freddie Mac; the bankruptcy court found, as a matter of law, that Wells Fargo was "not the servicer of the loan" and, thus, that Claim No. 1-2 was "not filed in Wells Fargo['s] . . . capacity as servicer or agent for the holder of the Claims or the underlying [N]ote and [D]eed of [T]rust, including, without limitation, on behalf of Freddie Mac."  (A428.)  However, the bankruptcy court denied Debtor's motion for an order declaring that Wells Fargo lacked standing to assert Claim No. 1-2, finding that Debtor did not establish, as a matter of law, that Wells Fargo lacked standing to bring Claim No. 1-2 "*as principal and holder* of the Claims, the [N]ote[,] and the [D]eed of [T]rust."  (*Id.* (emphasis added).)  Rather, the bankruptcy court concluded that, under Texas law, if Wells Fargo was the holder of the Note properly indorsed in blank by ABN Amro, Wells Fargo could personally enforce the Note and Deed of Trust.  (Order 6.)  Because discovery on the issue had not yet been completed, the bankruptcy court further scheduled an evidentiary hearing to address the bona fides of the blank indorsement.  (*Id.* at 7–8.)

After the completion of discovery and an evidentiary hearing, the bankruptcy court issued a Memorandum of Decision on Debtor's Objection to Claim of Wells Fargo Bank, NA, ruling that, on the evidence provided by the Parties, Wells Fargo did not satisfy its burden to show that

the blank indorsement on the Note attached to Claim No. 1-2 was genuine.  (*Id.* at 29–30.)  As a result, on February 9, 2015, the bankruptcy court issued an Order disallowing and expunging Claim No. 1-1 and Claim No. 1-2.  (A564–A565.)

Wells Fargo filed a Notice of Appeal, appealing the bankruptcy court's order disallowing and expunging the proofs of claim.  (Notice of Appeal (Dkt No. 1).)

## II.  Discussion

### A.  Standard of Review

#### 1.  Review of Bankruptcy Court's Order

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).  A district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law de novo.  *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the [d]istrict [c]ourt, we review the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law de novo . . . ." (citation and italics omitted)); *In re Enron Corp.*, 307 B.R. 372, 378 (S.D.N.Y. 2004) ("A bankruptcy court's conclusions of law are reviewed de novo and its findings of fact for clear error." (italics omitted)).

"A bankruptcy court's decision to grant summary judgment is reviewed de novo because the existence of issues of material fact is a question of law."  *In re Enron N. Am. Corp.*, 312 B.R. 27, 28–29 (S.D.N.Y. 2004) (italics omitted); *see also Baranek v. Baranek*, No. 12-CV-5090, 2013 WL 4899862, at *4 (E.D.N.Y. Sept. 11, 2013) (same), *aff'd sub nom. In re Baranek*, 579 F. App'x 57 (2d Cir. 2014).

Under the clear error standard, "[t]here is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence," and a reviewing court will not upset a

factual finding "unless [it is] left with the definite and firm conviction that a mistake has been committed." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994) (first alteration in original) (internal quotation marks omitted); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) ("[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (internal quotation marks omitted)); *Ceraso v. Motiva Enters., LLC*, 326 F.3d 303, 316 (2d Cir. 2003) (stating that an appellate court should not overturn a trial judge's choice "between permissible competing inferences"). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Travellers Int'l*, 41 F.3d at 1574–75 (internal quotation marks omitted); *see also UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 372 (2d Cir. 2015) (same); *In re CBI Holding Co., Inc.*, 419 B.R. 553, 563 (S.D.N.Y. 2009) ("In reviewing findings for clear error, [an appellate court] is not allowed to second-guess . . . the trial court's . . . choice between competing inferences. Even if the appellate court might have weighed the evidence differently, it may not overturn findings that are not clearly erroneous." (alterations in original) (internal quotation marks omitted)).

### 2.  Summary Judgment Standard

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).[5]  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at *2 (S.D.N.Y. Apr. 9, 2014) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that [her] allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'"  *Wrobel v. Cty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the

---

[5] Fed. R. Bankr. P. 7056 makes Fed. R. Civ. P. 56 applicable in bankruptcy cases.

pleadings," *Walker v. City of N.Y.*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

B.  Analysis

Wells Fargo's Statement of Issues Presented on Appeal lists the following five issues:

1.  Whether the Bankruptcy Court improperly sustained Debtor's objection to Wells Fargo's claim, and based thereon disallowed and expunged that claim.

2.  Whether the Bankruptcy Court erred in concluding that the Debtor had overcome the presumption of authenticity that attaches to a signed [i]ndorsement on commercial paper.

3.  Whether the Bankruptcy Court erred in concluding that Wells Fargo did not have standing to enforce the Debtor's note because it had not authenticated the indorsements on the note.

4.  Whether the Bankruptcy Court erred in concluding that Wells Fargo had waived or failed to assert its claim of equitable estoppel, thus precluding a finding that the Debtor was estopped from contesting the enforceability of her note, or Wells Fargo's entitlement to enforce it as holder and servicer for the owner.

5.  Whether the Bankruptcy Court erred in concluding that Wells Fargo was not the servicer of Debtor's note.

(Designation of Record and Statement of Issues Presented on Appeal ("Statement of Issues") at unnumbered 1–2 (Dkt. No. 2).)  Put more directly, the appeal challenges the bankruptcy court's ruling as to (1) the authenticity of the blank indorsement, and (2) whether Wells Fargo established its standing to assert a claim on behalf of Freddie Mac as the servicer of Debtor's loan.  The Court will consider each in turn.

1.  Indorsement Authenticity

As explained by the bankruptcy court, and not disputed by Debtor on appeal, under Texas law, a holder of a note indorsed in blank has standing to enforce the note.  (Order 6–7.)[6] Accordingly, the critical question before the bankruptcy court was the authenticity of the blank indorsement on the Note attached to Claim No. 1-2; if the indorsement is authentic, Wells Fargo has standing to enforce the Note.  The bankruptcy court first found that Debtor provided sufficient evidence to overcome the Texas UCC's presumption in favor of the authenticity of indorsements.  (*See* Order 12–22.)  Having found the presumption defeated, the bankruptcy court then determined that Wells Fargo did not carry its burden to establish the authenticity of the indorsement.  (*Id.* at 22–30.)[7]  The factual findings underpinning the bankruptcy court's ruling

---

[6] The Deed of Trust contains a Texas choice-of-law provision, (A120), and thus the claim objection is governed by Texas law.  Regardless, because the Note and Deed of Trust were signed in Texas and concern property located in Texas, under New York conflict of law principles, Texas law would govern even in the absence of the choice of law provision.  *See, e.g.*, *Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 398–99 (S.D.N.Y. 2000) (noting that, "[u]nder New York conflict of law rules, the law of the jurisdiction having the greatest interest in the litigation will be applied," and that "choice of law clauses in contracts and loan documents are generally honored in New York" (internal quotation marks omitted)).

[7] Wells Fargo does not challenge this finding on appeal.  Although one of the issues on appeal identified by Wells Fargo is "[w]hether the Bankruptcy Court erred in concluding that Wells Fargo did not have standing to enforce . . . Debtor's note because it had not authenticated the indorsements on the note," (Statement of Issues at unnumbered 2), which could possibly be read as challenging the bankruptcy court's finding with respect to Wells Fargo's burden described above, Wells Fargo's briefing challenges *only* the bankruptcy court's decision at step one of the analysis, (*see, e.g.*, Appellant Br. 2 (stating as the relevant issue "[w]hether the Bankruptcy Court erred in concluding that [Debtor] had rebutted the presumption of authenticity that attaches to signatures on commercial paper"); Reply Br. for Appellant Wells Fargo Bank, N.A. 6 (Dkt. No. 24) ("[B]ecause the presumption was unrebutted, [Debtor's] claim that Wells Fargo did not prove the indorsement's authenticity . . . has no relevance to the case.")); *see also In re Residential Capital, LLC*, 552 B.R. 50, 62 n.9 (S.D.N.Y. 2015) (noting that issues not included in argument section of appellant's brief are waived).

on the authenticity issue are reviewed for clear error, but its application of those facts to draw its conclusion that Debtor overcame the presumption is reviewed de novo. *See United States v. Aumais*, 656 F.3d 147, 154 (2d Cir. 2011) (reviewing district court's findings of fact for clear error, but reviewing "de novo a district court's application of the facts to draw conclusions of law, including a finding of liability" (alteration and internal quotation marks omitted)).

a.  Applicable Law

Under Texas law, "[t]o recover on a promissory note, the plaintiff must prove:  (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner *or the holder of the note*; and (4) that a certain balance is due and owing on the note." *SMS Fin., Ltd. Liab. Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 238 (5th Cir. 1999) (emphasis added); *see also Roberts v. Roper*, 373 S.W.3d 227, 232 (Tex. App. 2012) (same).  Accordingly, an entity can enforce a note so long as it is the "holder" of the note, even if it does not own the note.  *See* Tex. Bus. & Com. Code ("BCC") § 3.301 ("'Person entitled to enforce' an instrument [includes] the holder of the instrument . . . [and a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument . . . .").  A "holder" of a note includes "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession."  BCC § 1.201(b)(21)(A).  A person may become the holder of a note either at issuance or negotiation.  *See Johnson v. JPMorgan Chase Bank, N.A.*, No. 12-CV-285, 2013 WL 2554415, at *11 (E.D. Tex. June 7, 2013), *aff'd*, 570 F. App'x 404 (5th Cir. 2014).  When the instrument is payable to an identified entity, negotiation of the instrument requires transfer of possession of the instrument and its indorsement by the holder.  BCC § 3.201(b).  However, "[i]f an instrument is payable to bearer, it may be negotiated

by transfer of possession alone." *Id.* An instrument bearing a "blank indorsement" is payable to bearer and, accordingly, may be transferred by possession alone. BCC § 3.205(b). Thus, if the blank indorsement that appears on the Note attached to Claim No. 1-2 is authentic, Wells Fargo is the holder of an instrument payable to bearer and is entitled to enforce the Note. *See In re Pastran*, No. 06-CV-34728, 2010 WL 2773243, at *3 (N.D. Tex. July 30, 2010) ("Thus, since AMHS is in possession of a promissory note indorsed in 'blank,' it is, by definition, a 'holder,' under [§] 3.201(a)[,] . . . assum[ing] that all of the indorsements on the [n]ote are authentic and authorized.").

Under Texas law (and the UCC more generally), indorsements on negotiable instruments are presumed to be authentic. Specifically:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but *the signature is presumed to be authentic* and authorized . . . .

BCC § 3.308(a) (emphasis added). The presumption of authenticity "rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant." BCC § 3.308 cmt. 1. To the extent "that a fact is 'presumed,' the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence." BCC § 1.206. Thus, in the context of indorsements, the bankruptcy court was required to find the blank indorsement to be authentic "unless and until evidence [was] introduced that support[ed] a finding of" inauthenticity. *Id.* Because the ultimate "burden of establishing validity [of the indorsement] is on the person claiming validity," BCC § 3.308(a), if sufficient evidence is introduced by Debtor

13

to overcome the presumption, the burden shifts back to Wells Fargo to establish the validity of the indorsement "by a preponderance of the total evidence," *id.* cmt. 1; *see also In re Pastran*, 2010 WL 2773243, at *3 ("[The claimant] is not required to prove that the indorsements on the [n]ote are valid and authentic unless and until the [d]ebtor overcomes the presumption by putting on evidence that supports a finding that the indorsements on the [n]ote were somehow forged or unauthorized."). The showing necessary to overcome the presumption of authenticity is described in the official comment as "some sufficient showing." BCC § 3.308 cmt. 1. The evidence "need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor." *Id.*

### b. Analysis

The bankruptcy court's conclusion that Debtor overcame the presumption of authenticity afforded to the blank indorsement was based on the following evidence: (1) that the version of the Note attached to Wells Fargo's initial Claim No. 1-1 did not contain the blank indorsement, (Order 15–16), (2) the existence of the Assignment of Mortgage from MERS to Wells Fargo, executed by Kennerty, an officer of Wells Fargo, only three days before Claim No. 1-1 was filed, (*id.* at 16–17), and (3) testimony by Kennerty of the general indorsement and assignment practices of the Wells Fargo indorsement and assignment teams, which showed "a general willingness and practice on Wells Fargo's part to create documentary evidence, after-the-fact, when enforcing its claims," (*id.* at 17–20).[8] Wells Fargo contends that, despite this evidence,

---

[8] Although Wells Fargo states in its brief that it objected to the admission of the Kennerty deposition and that the bankruptcy court "never actually admitted it" and should not have admitted it because the testimony "was not relevant to the issue being tried, and clearly was more prejudicial than it was probative," (Appellant Br. 16, 20), Wells Fargo does not directly

Debtor "produced no actual proof that the ABN Amro indorsement was forged." (Appellant Br. 11.) Rather, according to Wells Fargo, the bankruptcy court "relied on inferences drawn from circumstantial evidence, but those inferences were either not probative, unsupported by the record, or wholly speculative." (*Id.*)

As discussed above, Texas's version of the UCC required the bankruptcy court to accept the validity of the blank indorsement on the Note unless Debtor made "some sufficient showing" that the indorsement is invalid. BCC § 3.308 & cmt. Debtor's evidence "must be enough to support the denial [of validity] by permitting a finding in the defendant's favor." *Id.* As the bankruptcy court concluded, and neither party appears to challenge, the comment "suggests that the required evidentiary showing to overcome the presumption is similar to that needed to defeat a summary judgment motion: the introduction of sufficient evidence so that a reasonable trier of fact in the context of the dispute could find in [Debtor's] favor." (Order 13–14.) *Cf. Romano's Carryout, Inc. v. P.F. Chang's China Bistro, Inc.*, 964 N.E.2d 1102, 1107 (Ohio Ct. App. 2011) (explaining that, under Ohio's identical provision, "[t]o rebut the presumption, the defendant need not present the quantum of evidence necessary for the grant of a directed verdict; rather, the defendant must only present evidence sufficient to permit the trier of fact to make a finding in

---

challenge the use of the testimony in its Statement of Issues Presented on Appeal. Regardless, the testimony was relevant to the issue of whether the indorsement was authentic. Seeing as he signed the Assignment of Mortgage, Kennerty obviously had some role with respect to Debtor's loan. He also testified based on personal knowledge as to the practices of the assignment and indorsement teams at Wells Fargo. The fact that Wells Fargo had assignment and indorsement teams that, as the bankruptcy court found, would act to improve the record with respect to various notes and deeds of trust in Wells Fargo's possession, makes the fact that the indorsement at issue here was added after-the-fact to improve Wells Fargo's standing more probable "than it would be without the evidence." Fed. R. Evid. 401(a).

the defendant's favor"); *Guardian Bank v. San Jacinto Sav. Ass'n*, 593 S.W.2d 860, 862–63

(Tex. App. 1980) ("In the absence of . . . competent summary judgment evidence contesting [an

indorsement's] genuineness, the presumption [under the Texas Business Code] that the

[i]ndorsements are genuine stands."); *Freeman Check Cashing, Inc. v. State*, 412 N.Y.S.2d 963,

964 (Ct. Cl. 1979) (under identical language in New York's version of the UCC, overcoming the

presumption of validity is not a question of "substantial evidence" or quantity of evidence, but

rather that of "legal sufficiency").

       Wells Fargo contends that the evidence relied upon by the bankruptcy court consisted

entirely of unjustified speculation and conclusory allegations that cannot serve as the competent

evidence necessary to overcome the indorsement's presumption of validity.  (*See, e.g.*, Appellant

Br. 20 ("The Bankruptcy Court's assumption . . . that Kennerty must have forged indorsements is

precisely the sort of speculation that cannot rise to the level of 'competent evidence' that the

[blank] indorsement . . . was forged."); Reply Br. for Appellant Wells Fargo Bank, N.A. ("Reply

Br.") 2 (Dkt. No. 24) ("Speculative and conclusory assertions are all that the Bankruptcy Court

and [Debtor] could point to.").)  Wells Fargo is correct that if Debtor's evidence merely raised

some "metaphysical doubt" as to the validity of the indorsement, *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), Debtor would not have satisfied its burden and

thus would not have overcome the presumption of validity in § 3.308, *see, e.g.*, *In re Connelly*,

487 B.R. 230, 244 (Bankr. D. Ariz. 2013) (holding that the plaintiff, who challenged the

authenticity of a deed of trust and other relevant documents but only "promised to bring forth

additional evidence at a later date," relied on "metaphysical doubt [rather] than evidence

deserving all reasonable inference").

Here, however, Debtor has not relied on mere speculation and conclusory assertions to overcome the presumption.  Rather, Debtor offered specific evidence from which the bankruptcy court found that a reasonable juror could draw the inference that the blank indorsement was not genuine.  Wells Fargo's arguments to the contrary are not persuasive.

First, Wells Fargo contends that "a difference in copies [of notes attached to various court filings] is not probative evidence of forgery."  (Appellant Br. 15.)  Although Wells Fargo is correct that some courts have held that evidence of differences among notes attached to various court filings, on its own, and in certain circumstances, does not constitute a sufficient showing to overcome the presumption of genuineness, the Court disagrees that the sequence of events in *this case* is not in any way probative evidence of forgery, particularly in conjunction with the other evidence relied upon by the bankruptcy court.  It is undisputed that Wells Fargo's first proof of claim, Claim No. 1-1, contained a copy of the Note containing no blank indorsement.  (*See* A71.)  Wells Fargo does not dispute the bankruptcy court's finding that Debtor's counsel contacted Wells Fargo's counsel after reviewing Claim No. 1-1, "with questions regarding Wells Fargo's standing to assert the claim."  (Order 3.)  Wells Fargo eventually filed the amended proof of claim, Claim No. 1-2, which was the exact same as the previous claim in all respects except that the copy of the Note attached to the claim contained the blank indorsement.  (*Id.* at 4.)  While certainly not conclusive of forgery, this sequence of events sufficiently distinguishes the present case from others in which the later-filed note containing the relevant indorsement appeared in filings *before* any issues were raised with respect to the claimant's standing.  For example, in *In re Phillips*, 491 B.R. 255 (Bankr. D. Nev. 2013), relied upon by Wells Fargo, the entity seeking to enforce a note did not attach a copy of the note or the relevant allonge to its initial proof of

claim, but did attach the note and allonge to later filings. *See id.* at 259. The debtor argued that

since the note and allonge were not produced at filing, and since the proof of claim was never

amended formally, the subsequent appearance of the allonge later in the proceeding meant that

the allonge was forged at some point in between. *Id.* at 273. The court found that the relevant

"sequence of events . . . d[id] not constitute a threshold showing of fraud or forgery." *Id.* Of

particular note, although the initial proof of claim did not include the note or allonge, a separate

motion to lift a stay *did* attach copies of the note and allonge, and the motion to lift the stay "was

filed . . . long before [the debtor] objected to the [p]roof of [c]laim." *Id.* Thus, in that case, the

relevant indorsement appeared before doubts had been raised as to the standing of the entity

seeking to collect. *See also In re Stanley*, 514 B.R. 27, 40 (Bankr. D. Nev. 2012) (same

sequence of events as *In re Phillips*).

  The Court need not determine, however, whether the particular sequence of events here is

sufficient on its own to overcome the presumption of genuineness because the bankruptcy court

relied on evidence beyond just the different versions of the Note, including the Assignment of

Mortgage signed by Kennerty purporting to assign the Deed of Trust securing Debtor's loan

from MERS to Wells Fargo. (*See* Order 16–17.) The bankruptcy court was troubled by the

following aspects of the Assignment of Mortgage: (1) the Assignment of Mortgage authorizing

the assignment from MERS to Wells Fargo was signed by Kennerty, who was an employee of

Wells Fargo; (2) the earlier assignment of the Deed of Trust by ABN Amro to MERS assigned

the Deed of Trust to MERS "as nominee" of Washington Mutual (without mention of

Washington Mutual's successors and assigns), an entity that had since ceased to exist, and so

MERS and/or Kennerty were unauthorized to assign the Deed of Trust to Wells Fargo; and (3)

the Assignment of Mortgage was dated July 12, 2012, just three days before Wells Fargo filed Claim No. 1-1.  (*Id.* at 3, 6 n.7, 16.)  To the bankruptcy court, this assignment was evidence of efforts to improve the record surrounding Wells Fargo's standing to file a proof of claim enforcing the Note.

Wells Fargo objects to Debtor's and the bankruptcy court's reliance on the Assignment of Mortgage.  Wells Fargo stresses that employees of MERS member entities often sign documents on MERS's behalf and that there was, therefore, nothing untoward about Kennerty's execution of the Assignment of Mortgage.  (Appellant Br. 16–17.)  Even granting Wells Fargo this point, the Assignment of Mortgage remains probative evidence of the possible invalidity of the blank indorsement because of MERS's apparent lack of authority to assign the Deed of Trust in light of Washington Mutual's non-existence and, more importantly, the assignment's timing.  The Assignment of Mortgage was signed July 12, 2010, just three days before Proof of Claim No. 1-1 was filed.  (*See* A104–A105; *see also* A67.)  If Wells Fargo already possessed the Note with a blank indorsement, which would be sufficient to confer standing to enforce the Note three days later, what would have necessitated the Assignment of Mortgage three days before filing the proof of claim?  The decision to execute such an assignment is even more unusual given the likelihood that MERS lacked authority to assign a Deed of Trust as nominee for a defunct entity. Based on the timing of the Assignment of Mortgage and the lack of authority (as well as Kennerty's deposition testimony, discussed below), the Court cannot find that the bankruptcy court's factual finding that the Assignment of Mortgage "was prepared by Wells Fargo's then counsel to 'improve' the record supporting Wells Fargo's right to file a secured claim," (Order 16), was clearly erroneous.

19

The situation here is quite similar to that in *In re Tarantola*, No. 09-BK-9703, 2010 WL 3022038 (Bankr. D. Ariz. July 29, 2010).  In that case, Deutsche Bank filed a motion for relief from stay on December 8, 2009, on the grounds that the debtor was in default and that Deutsche Bank was the holder of the relevant note secured by debtor's property.  *Id.* at *1.  Deutsche Bank attached to that filing a note containing no indorsements and no allonges.  *Id.* at *2.  Just under a month later, Deutsche Bank filed a new exhibit in support of its motion that included an allonge that purported to assign the note from the originator of the loan to Deutsche Bank.  *Id.* at *2. Finally, at an evidentiary hearing on the issue of Deutsche Bank's standing, Deutsche Bank introduced the original note, which now bore two indorsements, the later-dated indorsement being a blank indorsement.  *Id.*  At the hearing, a Deutsche Bank witness admitted that the allonge was "created after the [motion was filed] to 'get the attorneys the information they needed.'"  *Id.* at *3.  Addressing whether the blank indorsement provided Deutsche Bank with standing to seek relief from the stay, the court chose not to "apply the usual evidentiary presumptions of validity to the [i]ndorsements" because the claimant failed to provide a "credible explanation" for differences between various versions of the relevant note filed with the court and because Deutsche Bank admitted that the allonge was created after the fact to improve the record with respect to its standing.  *Id.* at *4.

The Court acknowledges that the circumstances in this case are not identical to those in *In re Tarantola*.  Unlike the allonge in that case, which was created *after* the motion for relief from stay was filed, the Assignment of Mortgage executed by Kennerty was filed three days *before* Claim No. 1-1 was filed.  However, such assignment, like the allonge in *In re Tarantola*, remains evidence of the fact that Wells Fargo felt compelled to create a better record regarding

its standing, despite purportedly possessing a note indorsed in blank, which, under Texas law,

provided Wells Fargo standing to enforce the Note as a holder.[9]

Finally, although Kennerty did not expressly testify that the Assignment of Mortgage was

executed to improve the record with respect to Debtor's loan, the bankruptcy court did find that

his deposition testimony established that Wells Fargo had a "general willingness and

practice . . . to create documentary evidence, after-the-fact, when enforcing its claims," (Order

17–18; *see also id.* at 22 (concluding that, based on Kennerty's testimony, "[it] is more

reasonable to infer . . . that . . . Wells Fargo was improving its own position by creating new

documents and indorsements *from third parties to itself* to ensure that it could enforce its

claims")), a finding that this Court does not believe is clearly erroneous.  Kennerty repeatedly

testified to a process whereby Wells Fargo's outside enforcement counsel would inquire of

Kennerty and his "assignment team" whether or not a certain assignment existed and if it did not

the attorney would draft the assignment and someone, possibly Kennerty, would sign it.  (*See,

e.g.*, A1191 ("[I]f the assignment needed to be created they would have advised

the . . . requesting attorney . . . that we did not have the assignment in the collateral file, then they

needed to draw up the appropriate document."); A1231 ("[I]f there was not an assignment in

there then they would . . . advise the attorney that we did not have it, that they would need to

draft the . . . appropriate document."); A1236 ("[I]f it's something that was not in the file or it

---

[9] Also, as with MERS's/Kennerty's lack of authority to assign the Deed of Trust in light of the fact Washington Mutual had ceased to exist, the *In re Tarantola* court found that the after-the-fact allonge would have been ineffective to transfer the note because the party executing it "had no authority to do so."  *In re Tarantola*, 2010 WL 3022038, at *4.  It stands to reason that a claimant who is willing to execute an unauthorized document to create standing is more likely willing to forge a blank indorsement to create standing as well.

was something that was in the file, but couldn't be used[,] then they would advise the requesting

attorney to go ahead and draft the actual document."); A1238 ("The attorney

would . . . determine that an assignment was needed, then they would reach out to the assignment

team to request an assignment for A to B, [and if] we d[idn't] have it, [we would tell the

attorney], you need to prepare it.").)  Kennerty also testified to a seemingly similar process with

respect to indorsements.  "The request would come in" and the indorsement team "would check

to see if [they] had the collateral file" and the note and once they located the note they would

"check to see if there was any [i]ndorsement on the back of the note."  (A1250.)  Kennerty did

not specifically recall how the indorsement team would go about indorsing the note if there was

no indorsement, but, to the best of his recollection, "a stamp was involved but then it had to be

signed."  (A1251.)

The Court agrees with the bankruptcy court that, while "it is conceivable that all of Wells

Fargo's newly created mortgage assignments and newly created indorsements were

proper . . . that interpretation certainly does not leap out from . . . Kennerty's testimony."  (Order

21.)  As such, the Court cannot say that it is "left with the definite and firm conviction that a

mistake has been made," *Travellers*, 41 F.3d at 1574 (internal quotation marks omitted), and thus

cannot say that the bankruptcy court's findings with respect to the testimony were clearly

erroneous.  Although on its own this testimony as to the general practices of Wells Fargo's

assignment and indorsement teams may not have been especially probative as to whether the

blank indorsement on the Note in particular was forged, the sequencing of the two claims and the

versions of the attached Notes and the dubious, last-minute Assignment of Mortgage make it

22

plausible that Wells Fargo's general efforts to "improve the record" with respect to its various mortgages led to the forgery of the blank indorsement on the Note.

Therefore, when the evidence is considered together, the Court concludes that the bankruptcy court did not err in finding that Debtor does not rely merely on speculation or conjecture, and that a reasonable fact-finder could infer that the blank indorsement was not genuine, eliminating the indorsement's presumption of validity. *Cf., e.g.*, *Nguyen v. Fed. Nat'l Mortg. Ass'n*, 958 F. Supp. 2d 781, 788–89 (S.D. Tex. 2013) (holding that "no genuine fact issue material to determining the [i]ndorsements' validity arises" based on the debtor's allegations that the alleged indorsements "appear very different and contain glaring discrepancies" (internal quotation marks omitted)); *Patrick v. Bank of N.Y. Mellon*, No. 11-CV-1304, 2012 WL 934288, at *12 (D. Colo. Mar. 1, 2012) (finding that the fact that the debtor "is 'suspicious' and 'has doubts' about" the validity of a signature is insufficient to overcome presumption of validity); *Nw. Bank Minn. v. Diaz*, No. 96-CV-5335, 1998 WL 30677, at *4 (N.D. Ill. Jan. 21, 1998) (concluding that the debtor did not overcome the presumption of genuineness where the evidence "consisted of a self-serving denial that he had signed the Guaranty along with a far-fetched story about how other unknown or unnamed individual(s) might have forged his signature"); *In re Bass*, 738 S.E.2d 173, 177 (N.C. 2013) (the debtor's "bare assertion," that "We don't know who had authority" and that "You have to have something more than a mere stamp" was insufficient to overcome the presumption in favor of the signature (alteration and internal quotation marks

omitted)).[10]  As such, the evidence shifted the burden to Wells Fargo to establish the authenticity

of the blank indorsement by a preponderance of the evidence.[11]

This is not a finding that Wells Fargo did, in fact, forge the blank indorsement, or that

Wells Fargo has a general practice of forging indorsements in situations akin to this one.  Rather,

the Court has only found that the bankruptcy court's factual findings with respect to the blank

---

[10] Though not directly analogous to the situation here, the Court notes that some courts have found that merely a defendant's denial that he or she signed the document along with alleged differences in signatures was sufficient to overcome the presumption.  *See, e.g.*, *Mortgage Lenders Network, USA, Inc. v. Adkins*, No. 04-CV-7767, 2007 WL 963212, at *4–5 (N.D. Ohio Mar. 28, 2007) (noting that signatures are "presumptively valid" but holding that "the burden [to establish validity] now shifts to [the] [p]laintiff to provide evidence that [the defendant's] signatures are in fact valid," based on the defendant's deposition testimony which "repeatedly stated that [someone] 'forged my name, forged my signature,'" and "detailed the way in which the signatures on the appraisals differ from her bona fide signature" (alterations, italics, and internal quotation marks omitted)); *First Nat'l Bank v. A.A. Blackhurst*, 345 S.E.2d 567, 572 (W. Va. 1986) ("In the present case, [the defendant] denied the genuineness of his signature and introduced a financial statement bearing his signature into evidence.  Accordingly, this evidence was substantial enough to remove the presumption in favor of the bank.").

[11] Moreover, it bears noting that the justifications underpinning the presumption of validity are not particularly apt in situations like Debtor's.  As noted earlier, the official comment to the BCC explains that the presumption is warranted because (1) "in ordinary experience forged or unauthorized signatures are very uncommon," and (2) "normally any evidence is within the control of, or more accessible to, the [party challenging the signature's authenticity]." BCC § 3-308 cmt. 1.  In the wake of the recent foreclosure crisis, and the dubiousness of the common robo-signing practices of various banks and other foreclosing entities, *see, e.g.*, Matthew Petrozziello, *Who Can Enforce? The Murky World of Robo-Signed Mortgages*, 67 Rutgers U. L. Rev. 1061, 1068–70 (2015), it may be time to reconsider whether "forged or unauthorized signatures" remain "very uncommon," *see* Eric A. Zacks & Dustin A. Zacks, *A Standing Question: Mortgages, Assignments, and Foreclosure*, 40 J. Corp. L. 705, 706 (2015) ("[I]n the face of an overwhelming volume of foreclosures to be processed, mortgagees and their assignees often failed to assign the mortgages properly, and, in some instances, committed fraud or other unauthorized acts in order to correct the assignment paper trail.").  Also, this is not a case where evidence regarding the validity of the indorsement would be in the control of, or more accessible to, Debtor.  One would expect that a large banking and financial services company would have readily accessible evidence by which it could establish the timing and validity of the blank indorsement.

indorsement are sufficient to overcome the relatively modest presumption of validity that attaches to the indorsement.  The burden thus shifted to Wells Fargo to establish, by a preponderance of the evidence, that the indorsement was genuine.  The bankruptcy court found that Wells Fargo failed to do so.  As noted above, Wells Fargo did not argue in its briefing before this Court that it made such a showing in the event the presumption of authenticity was overcome.  Accordingly, the Court affirms the bankruptcy court's ruling that Wells Fargo lacks standing to file its proof of claim as a holder of the Note.

### 2.  Servicer Standing

Despite not being a holder of the Note, Wells Fargo argues that it can still file a proof of claim in a representative capacity on behalf of Freddie Mac, as a servicer of Debtor's loan. Ruling from the bench, Judge Drain held that there was no genuine issue of material fact that "dispute[s] the proposition that Wells Fargo is not the servicer of th[e] loan or that it is, in fact, a loan owned by Freddie Mac, either based on its ownership of the [N]ote or the . . . [D]eed of [T]rust."  (A960.)  In support of this ruling, Judge Drain noted that Wells Fargo did not sign the relevant claims as Freddie Mac's agent, but actually named itself as the creditor, and that Wells Fargo was unable to produce either an "enforceable servicing agreement or contract between it and Freddie Mac," or any evidence of "any record of having any payments [made] by Wells Fargo to Freddie Mac in connection with collections on this loan."  (A958–A960.)  Considering Wells Fargo's evidence in support of the servicing relationship, Judge Drain was not swayed by "a letter, apparently from Freddie Mac, . . . authorizing a loan modification . . . that Wells Fargo ha[d] negotiated," as well as "very general testimony by Wells Fargo's 30(b)(6) witness that

there is in fact a loan servicing relationship between Freddie Mac and Wells Fargo."  (A959–

A960.)[12]

### a.  Applicable Law

To file a proof of claim, a claimant must be a real party in interest, which means that the

claimant is "a 'creditor or the creditor's authorized agent.'"  *In re Minbatiwalla*, 424 B.R. 104,

108 (Bankr. S.D.N.Y. 2010) (quoting Fed. R. Bankr. P. 3001(b)); *see also In re Thalmann*, 469

B.R. 677, 683 (Bankr. S.D. Tex. 2012) (same); *In re Simmerman*, 463 B.R. 47, 59 (S.D. Ohio

2011) (same).  In other words, "[t]o have an allowed proof of claim, the claimant must prove an

initial fact:  that it is the creditor to whom the debt is owed or, alternatively, that it is the

authorized agent of the creditor."  *In re Parrish*, 326 B.R. 708, 719 (Bankr. N.D. Ohio 2005).

The real party in interest "with respect to a mortgage proof of claim is the party entitled to

enforce the note and its accompanying mortgage."  *In re Simmerman*, 463 B.R. at 59 (internal

quotation marks omitted); *see also In re Hunter*, 466 B.R. 439, 448 (Bankr. E.D. Tenn. 2012)

(same); *In re Wright*, No. 10-3893, 2012 WL 27500, at *2 (Bankr. D. Haw. Jan. 5, 2012) (same),

*reconsideration denied*, 2012 WL 260744 (Bankr. D. Haw. Jan. 27, 2012).  Accordingly, Wells

Fargo is a real party in interest with standing to assert the proof of claim if it is either an entity

entitled to enforce the Note or it is the "authorized agent" of an entity that is entitled to enforce

the Note.

Wells Fargo contends that it was "entitled to file [the] proof of claim on behalf of Freddie

Mac as the servicer of [Debtor's] loan."  (Appellant Br. 12.)  "Mortgage servicers have been

---

[12] With respect to the letter, Judge Drain stated that the letterhead "doesn't look like any
letterhead I've ever seen before."  (A959.)

determined to constitute authorized agents with standing to file proofs of claim or seek stay

relief."  *In re Sia*, No. 10-41873, 2013 WL 4547312, at *12 (Bankr. D. N.J. Aug. 27, 2013); *see*

*In re Minbatiwalla*, 424 B.R. at 109 (same); *In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr.

E.D.N.Y. 2008) ("A servicer of a mortgage is . . . a creditor and has standing to file a proof of

claim against a debtor pursuant to its duties as a servicer."); *see also Greer v. O'Dell*, 305 F.3d

1297, 1302 (11th Cir. 2002) ("A servicer is a party in interest in proceedings involving loans

which it services.").

### b.  Analysis

Wells Fargo does not dispute that it failed to produce any executed agreement governing

its servicing relationship with Freddie Mac or evidence of any payments made from Wells Fargo

to Freddie Mac in its alleged role as servicer.  Rather, Wells Fargo argues that it was not required

to produce any servicing agreement or remittance reports, (*see* Appellant Br. 23–24; Reply Br.

6), and points to a host of other evidence that it argues establishes that Wells Fargo "was Freddie

Mac's servicer" with respect to Debtor's loan, (*see* Appellant Br. 23).  In particular, Wells Fargo

relies on:  (1) the deposition testimony of Ellen Brust, Wells Fargo's corporate representative,

(*see* A568–A878); (2) a loan modification between Wells Fargo and Debtor, (*see* A134–A136);

(3) a letter purportedly from Freddie Mac to Wells Fargo that identified Debtor's loan and

approved the loan modification between Wells Fargo and Debtor, (*see* A137–A138); and (4)

correspondence dated after Claim No. 1-1 was filed:  an email from the address

"web_inquiries@freddiemac.com," dated July 27, 2010, stating that Freddie Mac's "records

show that Freddie Mac is the owner of [Debtor's] mortgage," (*see* A226), and an August 18,

2010 letter, in which Wells Fargo informs Debtor's counsel that "[t]he investor of the loan is Freddie Mac," (*see* A222).

The Court acknowledges that Wells Fargo's evidence is not overwhelming, and, indeed, its inability to produce the servicing agreement outlining the exact contours of its relationship with Freddie Mac with respect to Debtor's loan is troubling. However, at the summary judgment stage, Wells Fargo need only proffer "evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs.*, 735 F.3d at 123 (internal quotation marks omitted). The Court finds that, based on the evidence submitted, Wells Fargo has satisfied its burden. Wells Fargo has provided some evidence indicating that it operated in a servicer role with respect to Debtor's loan, including that Wells Fargo sent Debtor the "Hello" letter advising Debtor that Wells Fargo would begin servicing her loan on February 16, 2007, (A286), and a loan modification agreement subsequently entered into by Wells Fargo and Debtor, (A134–A136). Moreover, a reasonable factfinder could conclude that Wells Fargo serviced the loan *for* Freddie Mac, based on the letter from Freddie Mac to Wells Fargo referencing and approving the loan modification. (*See* A137–A138.) In that letter, Freddie Mac lists Debtor as the "Borrower[]" of the loan, and the loan is identified with a "Freddie Mac Loan [Number]" and a "Servicer Loan [Number]." (A137.) Therefore, a reasonable factfinder could conclude that Wells Fargo serviced Debtor's loan for Freddie Mac, and therefore could determine that Wells Fargo had standing to file the proof of claim on Freddie Mac's behalf. *See, e.g.*, *In re Sia*, 2013 WL 4547312, at *12; *In re Minbatiwalla*, 424 B.R. at 109.

Ultimately, Wells Fargo has submitted sufficient evidence to create a genuine issue of fact as to its authorization to act on Freddie Mac's behalf in the context of Debtor's loan. The

28

bankruptcy court's decision granting Debtor's partial summary judgment motion dismissing Wells Fargo's claim insofar as it is brought in a representative capacity on behalf of Freddie Mac is reversed.[13]

### III. Conclusion

For the reasons given herein, the judgment of the Bankruptcy Court is affirmed in part and reversed in part. The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

Dated:      White Plains, New York
            September 3 ∂ , 2016

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[13] The Court notes that Judge Drain's bench ruling observed that, apart from its inability to establish that it was the servicer of Debtor's loan, Wells Fargo failed to properly file Claim No. 1-2 in a representative capacity. (*See* A958.) Wells Fargo concedes that Claim No. 1-2 does not expressly state that the claim is being filed by Wells Fargo on behalf of Freddie Mac, but argues that a ruling disallowing its claim on that "hyper-technical basis" would be in error because Debtor "would not be prejudiced by an amendment of Wells Fargo's proof of claim." (Appellant Br. 12.) As Wells Fargo points out, courts have the discretion to allow late-filed amendments to proofs of claim in certain circumstances, *see, e.g.*, *In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005) (detailing criteria for considering late-amended proofs of claim), including where the amendment would indicate the filer's representational capacity and identify the true creditor, *see In re Unioil*, 962 F.2d 988, 992–93 (10th Cir. 1992). Thus, to the extent the argument remains available to Wells Fargo and relevant to the issue of its standing, Wells Fargo can consider seeking leave to amend Claim No. 1-2.